# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| SELERY FULFILLMENT, INC. § | |
| § | |
| *Plaintiff,* § | Civil Action No.  4:20-cv-853 |
| § | Judge Mazzant |
| v. § | |
| § | |
| COLONY INSURANCE COMPANY, § | |
| § | |
| *Defendant.* § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Colony Insurance Company's Rule 12(b)(6) Motion to Dismiss (Dkt. #11).  Having considered the motion and the relevant pleadings, the Court finds that the motion should be **GRANTED**.

### BACKGROUND

In early 2020, the COVID-19 pandemic caused sweeping changes to normal life across the United States.  Due to rising infection rates and concerns about public health, state and local authorities across the nation responded by implementing measures that—among other things—temporarily halted business activities.  The Parties' dispute here arises from the circumstances caused by some of these measures in Texas, Denton County, and the City of Carrollton, Texas.

Plaintiff Selery Fulfillment, Inc., ("Selery") is an eCommerce logistics provider in Carrollton, Texas, who helps businesses by providing warehousing and personalized order fulfillment (Dkt. #9 ¶¶ 3–9).  During October 2019, Selery began negotiations to obtain insurance coverage for its business and eventually purchased commercial insurance policy number 101 CP 0161431-00 ("Policy") from Defendant Colony Insurance Company ("Colony")

(Dkt. #9 ¶ 16). The Policy applied to Selery's commercial property at 1809 Frankford Road, Carrollton, Texas, 75007, and ran from November 21, 2019, to November 21, 2020 (Dkt. #9 ¶ 16).

As part of the Policy, Colony promised to pay "for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss" (Dkt. #9, Exhibit 1 at p. 17). Relevant here, Colony agreed to provide coverage for lost business income in specific situations by stating it would "pay for the actual loss of Business Income [Selery] sustain[s] due to the 'necessary suspension' of [Selery's] 'operations' during the 'period of restoration.' The 'suspension' must be caused by direct physical loss of or damage to property at premises which are described in the Declarations . . . ." (Dkt. #9, Exhibit 1 at p. 32). In addition to this coverage, the Policy also provided for situations where a civil authority restricted Selery's access to the property. Specifically, the Policy states:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, [Colony] will pay for the actual loss of Business Income [Selery] sustain[s] . . . caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply: (1) [a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and (2) [t]he action of civil authority is taken in response to dangerous physical conditions resulting from the damage or condition . . . that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Dkt. #9, Exhibit 1 at p. 33).

Selery performed its obligations under the Policy but ran into a disagreement with Colony on how to interpret the above provisions early last year (Dkt. #9 ¶¶ 16–50). From March to April 2020, various measures were put in place by the state of Texas, Denton County, and the City of Carrollton to respond to rising COVID-19 numbers, which forced Selery to cease business operations at its facility (Dkt. #9 ¶¶ 27–32). As a result, Selery alleges its business suffered

substantial loss during this period (Dkt. #9 ¶ 44).  Believing the Policy covered this suspension of business activity, Selery submitted an insurance claim with Colony (Dkt. #9 ¶ 46).

On June 5, 2020, Colony responded in a letter that it would not provide coverage to Selery because Colony believed the Policy did not cover Selery's claim (Dkt. #9 ¶ 47); *see also* (Dkt. #11 at pp. 1–2).  Selery filed a lawsuit in state court on July 27, 2020, alleging that Colony breached the agreement by not providing coverage (Dkt. #1 at pp. 1–2).  Colony then removed the action to this Court on October 30, 2020 (Dkt. #1 at p. 1).  Selery filed its Amended Complaint on November 27, 2020, and alleged it should recover against Colony on multiple grounds, including (1) breach of contract, (2) violation of the Texas Insurance Code Chapter 541, (3) breach of the duty of good faith and fair dealing, (4) violations of the Texas Deceptive Trade Practices Act, (5) negligence, (6) negligent misrepresentation, and (7) declaratory judgment under Texas law (Dkt. #11 ¶¶ 47–87).  In response, Colony filed a Rule 12(b)(6) motion to dismiss on December 17, 2020 (Dkt. #11).  Selery filed its response on December 31, 2020 (Dkt. #13).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Each claim must include enough factual allegations "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff.  *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012).  The Court may consider "the

complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

# ANALYSIS

The Parties offer different interpretations on the Policy's provisions. In its motion to dismiss, Colony asserts Selery fails to state a plausible claim because the Policy provisions plainly require any property to suffer concrete structural damage—which COVID-19 did not cause.

On the other hand, Selery argues COVID-19 is encompassed within the Policy's language because it caused a "direct physical loss of or damage to" its property. Selery also points to the Civil Authority provision in the Policy and contends that this too justifies its claim because the Texas, Denton County, and Carrollton governments restricted access to the covered property and prevented Selery from using it for its intended function.

Interpreting a contract is a question of law the Court must decide. *Colony Ins. Co. v. Custom Ag Commodities, LLC*, 272 F. Supp. 3d 948, 956 (E.D. Tex. 2017); *Lubbock Cty. Hosp. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 143 F.3d 239, 241–42 (5th Cir. 1998). "Under Texas law, the general rules of contract interpretation govern a court's review of an insurance policy." *Citigroup Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 371 (5th Cir. 2011) (citing *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004)). Therefore, the Court's goal is to determine the Parties' intent based on the written words of the policy itself. *Id.*; *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009). This inquiry is based on the Parties' written agreement—not their own present interpretations. *Colony Ins. Co.*, 272 F. Supp. 3d at 957 (citing *Nicholas Petroleum, Inc. v. Mid-Continent Cas. Co.*, No. 05-13-01106-CV, 2015 WL 4456185, at *5 (Tex. App.—Dallas July 21, 2015, no pet.)).

"Whether a contract is ambiguous is also a question of law." *Oceans Healthcare, L.L.C. v. Illinois Union Ins. Co.*, 379 F. Supp. 3d 554, 559 (E.D. Tex. 2019) (citing *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010)). A contract is not

ambiguous just because parties advance different interpretations. *Id.*; *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). Indeed, if a policy or contract has only one reasonable interpretation, the Court must construe it as a matter of law and enforce it as written. *Citigroup Inc.*, 649 F.3d at 371 (citing *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006)). If there are two reasonable interpretations, however, then a policy is ambiguous. *Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020); *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

While reviewing the policy, "[n]o one phrase, sentence, or section of [it] should be isolated from its setting and considered apart from the other provisions." *Oceans Healthcare*, 379 F. Supp. 3d at 559 (quoting *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008)). All words, sentences, and clauses of the policy must be read together and given effect as such. *Colony Ins. Co.*, 272 F. Supp. 3d at 957; *Citigroup*, 649 F.3d at 372; *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 766 (Tex. 2014). "A policy's terms must be given their ordinary and generally accepted meaning unless the policy shows the words were meant in a technical or different sense." *Colony Ins. Co.*, 272 F. Supp. 3d at 957 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. McMurray*, 342 F. App'x 956, 958 (5th Cir. 2009)). The Court cannot reword the policy or add its own language to it. *Id.* (citing *Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003)). It will abide by the policy's reasonable interpretation. *See id.*

The Parties' dispute turns on whether physical, concrete damage is required under the Policy's provisions. If it is, Colony argues Selery fails to state a claim because Colony acted within

the plain terms of the agreement. The Court addresses the relevant provisions and Plaintiff's other causes of action in turn.

### A. Business Income Provision

Plaintiff first contends that the Business Income provision covers its lost business income sustained due to COVID-19. As stated previously, that provision provided: "[Colony] will pay for the actual loss of Business Income [Selery] sustain[s] due to the 'necessary suspension' of [Selery's] 'operations' during the 'period of restoration.' The 'suspension' must be caused by *direct physical loss of or damage to property* at premises which are described in the Declarations" (Dkt. #9, Exhibit 1 at p. 32) (emphasis added).

The Parties agree there was a suspension of operations at the commercial property in Carrollton but differ on the meaning of the words "direct physical loss of or damage to property," which are undefined under the Policy. While Colony maintains concrete, physical damage is needed at the property, Selery reads the term more broadly (Dkt. #11 at pp. 9–14; Dkt. #13 at pp. 9–10). By using a definition of physical to mean "of or pertaining to matter," Selery attempts to argue that "physical loss" must be construed to mean any material thing that prevents access to the commercial property (Dkt. #13 at pp. 9–16). Because COVID-19, a living, physical virus, prevented Selery's full use of the property, it argues the situation is squarely within the provision's coverage (Dkt. #13 at pp. 10–16). At the very least, Selery offers that the situation is ambiguous under the terms of the agreement and a motion to dismiss is improper (Dkt. #13 at p. 23).

The Court disagrees and finds that the Business Income provision does not cover Selery's claim. The provision here provides in part that there must be "direct physical loss of or damage to property." The provision's focus on "direct physical loss of" or "damage to" *property* strongly

suggests there must be some tangible, concrete issue with that property.[1] The Fifth Circuit appears to take a similar position and reasons that physical loss requires substantive concrete damage. *See Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006) ("The requirement that the loss be 'physical,' given the ordinary definition of that term is widely held to . . . preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.") (quoting 10A Couch on Ins. § 148:46 (3d ed. 2005)); *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270–71 (5th Cir. 1990) ("The language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper."); *Diesel Barbershop,* 479 F. Supp. 3d 353, 360 (W.D. Tex. 2020) ("It appears that within our Circuit, the loss needs to have been a 'distinct, demonstrable physical alteration of the property.'") (citations omitted).

Therefore, it is unsurprising that district courts in the Fifth Circuit who have decided similar insurance cases dealing with COVID-19 have almost uniformly held that the pandemic does not constitute a "direct physical loss of or damage" to the property. *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, No. 1:20-CV-665-RP, 2020 WL 7351246, at *5–8 (W.D. Tex. Dec. 14, 2020) (agreeing with other district courts in the Fifth Circuit that government orders do not

---

[1] *See Hajer v. Ohio Sec. Ins. Co.*, No. 6:20-CV-00283, 2020 WL 7211636, at *2 (E.D. Tex. Dec. 7, 2020) ("The scope of the term 'physical loss' is far narrower than plaintiff contends and is only reasonably read in context as meaning 'a distinct, demonstrable, physical alteration of the property.'") (citations omitted); *Michael Cetta, Inc. v. Admiral Indem. Co.*, No. 20 CIV. 4612 (JPC), 2020 WL 7321405, at *6 (S.D.N.Y. Dec. 11, 2020) (reasoning that because "physical" is defined as relating to, or involving material things, "physical loss," similarly must mean concrete, tangible loss to property) (citing *Physical*, BLACK'S LAW DICTIONARY (11th ed. 2019)); *Sandy Point Dental, PC v. Cincinnati Ins. Co.,* No. 20 CV 2160, 2020 WL 5630465, at *2 (N.D. Ill. Sept. 21, 2020) ("The words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure.").

constitute a direct physical loss of or damage to property); *Hajer v. Ohio Sec. Ins. Co.*, No. 6:20-CV-00283, 2020 WL 7211636, at *3 (E.D. Tex. Dec. 7, 2020) (Barker, J.); *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-CV-00087-KS-MTP, 2020 WL 6503405, at *6 (S.D. Miss. Nov. 4, 2020); *Diesel Barbershop*, 479 F. Supp. 3d at 360 (holding that the Fifth Circuit's definition of physical loss precluded the plaintiffs from stating a claim).

The majority of federal courts agree with similar reasoning.[2] Selery attempts to distinguish these cases by arguing some of these decisions interpreted policies that contained a virus exclusion provision. But as it pertains to provisions like the one here, many of these district courts did not rely on the virus exclusion provision in holding a direct physical loss did not occur. *See Diesel Barbershop*, 479 F. Supp. 3d at 360 (reasoning that direct physical loss requires tangible injury to property, so plaintiffs "fail[ed] to plead a direct physical loss"); *Hajer*, 2020 WL 7211636, at *3 ("The business-interruption provision does not apply to the financial losses that plaintiff experienced."); *Terry Black's Barbecue*, 2020 WL 7351246, at *7 ("Plaintiffs have not pled any facts showing that the coronavirus caused physical loss, harm, alteration, or structural degradation to their property."); *Travelers*, 2020 WL 6503405, at *8 ("Plaintiff's Complaint fails to state a

---

[2] *See Sandy Point Dental*, 2020 WL 5630465 at *2 (holding similar policy language excluded coverage and finding its decision was "consistent with other courts that have evaluated whether the coronavirus causes property damage warranting insurance coverage"); *Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, No. 20-CV-03750-WHO, 2020 WL 6562332, at *3 (N.D. Cal. Nov. 9, 2020) ("I will follow the overwhelming majority of courts that have determined that the mere threat of coronavirus cannot cause a 'direct physical loss of or damage to' covered property as required under the Policy."); *Atma Beauty, Inc. v. HDI Glob. Specialty SE*, No. 1:20-CV-21745, 2020 WL 7770398, at *4 (S.D. Fla. Dec. 30, 2020) ("Plaintiff's allegations provide the Court no reason to deviate from the prevailing consensus in this Circuit and others regarding business interruption claims arising from the COVID-19 pandemic."); *Travelers*, 2020 WL 6503405, at *7 ("Most courts have rejected these claims and granted motions to dismiss based on the finding that the businesses' complete or partial closures due to government orders issued to slow the spread of COVID-19 do not constitute 'direct physical loss of or damage to property.'").

claim because it does not allege that any insured property was damaged or that Plaintiff was permanently dispossessed of any insured property.").

Selery cites a string of cases in other courts that appear to hold that the presence of substances prohibiting access to commercial property can constitute a direct physical loss, so COVID-19 should be included as well. *E.g.*, *Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399, 405–06 (1st Cir. 2009) (holding noxious odors that permeated insured's building constituted physical injury to property); *Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 825–26 (3d Cir. 2005) (reversing summary judgment decision on grounds that e-coli bacteria could cause direct physical loss to property); *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 707–10 (E.D. Va. 2010), *aff'd*, 504 F. App'x 251 (4th Cir. 2013) (holding that sulfuric gas being released from drywall into the insured's property is a direct physical loss).

Again, the Fifth Circuit's decisions suggest that actual structural alteration is required to constitute physical loss. *See Hartford Ins. Co.*, 181 F. App'x 465, 470 (5th Cir. 2006); *Ross v. Hartford Lloyd Ins. Co.*, No. 4:18-CV-00541-O, 2019 WL 2929761, at *6 (N.D. Tex. July 4, 2019) (finding that physical loss requires a "distinct, demonstrable, physical alteration of the property") (quoting 10A Couch on Ins. § 148:46 (3d ed. 2010)). Consequently, Selery's cases are not persuasive.

Selery's cases are also distinguishable because the physical conditions in those cases actually entered the insured's property. *See Essex Ins. Co.*, 562 F.3d at 405–06; *Hardinger*, 131 F. App'x at 824; *Ward*, 715 F. Supp. 3d at 703. Meanwhile, Selery makes no such allegation that COVID-19 did the same. Instead, Selery here contends that *government orders* prevented it from fully taking advantage of its property. *See* (Dkt. #9 ¶¶ 44–45) (arguing business income was lost due to "civil authorities prohibiting access to the insured premises"); *see*

10

*also* (Dkt. #13 at p. 6) ("COVID-19's actual physical presence in, and/or in the vicinity of premises *like Selery's* prevents the insured from making full use of its premises presence.") (emphasis added).

Selery also suggests the term "damage" provides a broader interpretation since the Policy includes "direct physical loss of *or* damage to property" (emphasis added). In other words, "damage" could provide an independent avenue for relief according to Selery. Even assuming damage presents a distinct method of recovery, it does not fortify Selery's case. The Policy references damage to property, which would ordinarily mean some structural harm. *See Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, No. CV 20-1869, 2020 WL 7395153, at *5 (E.D. Pa. Dec. 17, 2020) ("Property damage is 'a distinct, demonstrable, physical alteration of the property.'") (quoting 10A Couch on Ins. § 148.46 (3d ed. 1995)). It is too big of a leap to suggest that government orders that restrict access to property constitute "property damage," especially when the Policy insures Selery's commercial property location—not its entire business. *See Hajer*, 2020 WL 7211636, at *3 ("[A] regulation prohibiting people from patronizing a business is not a tangible alteration of any property."); *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686 (5th Cir. 2011) (concluding there was no nexus between property damage and a government evacuation order issued in anticipation of a hurricane as required under an insurance policy's civil authority provision).

This reading is also consistent with other district courts' decisions in this Circuit and Texas law. *See Terry Black's*, 2020 WL 7351246, at *11 ("[T]he unambiguous terms of the Policy do not provide coverage for solely economic losses unaccompanied by physical property damage.") (applying Texas law); *Diesel Barbershop*, 479 F. Supp. 3d at 360 (applying Texas law); *Hajer*, 2020 WL 7211636 at *3 (applying Texas law); *see also S. Texas Med. Clinics, P.A. v. CNA Fin.*

*Corp.*, No. CIV.A. H-06-4041, 2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008) (finding that government evacuation orders issued due to an anticipated impact of a hurricane did not constitute property damage under Texas law).

The interpretation that this provision requires tangible damage is further reinforced by the rest of the Policy. *See Citigroup,* 649 F.3d at 372; *Greene*, 446 S.W.3d at 766. The provision here hinges on payments being made during the "period of restoration," so it is instructive to see how the Policy defines that period (Dkt. #9, Exhibit 1 at p. 32). Under the Policy, the restoration period begins "72 hours after the time of physical loss or damage" or "immediately after the time of direct physical loss or damage for Extra Expense Coverage" and ends either on (1) "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality" or (2) "[t]he date when business is resumed at a new permanent location" (Dkt. #9, Exhibit 1 at p. 40).

As Colony rightfully notes, the provision implies that some kind of structural damage occurred because it mentions the property itself undergoing physical processes like rebuilds, repairs, or replacements—or even Selery having to leave the location altogether. *See T & E Chicago LLC v. Cincinnati Ins. Co.*, No. 20 C 4001, 2020 WL 6801845, at *5 (N.D. Ill. Nov. 19, 2020) ("[A] 'period of restoration,' . . . clearly implies a requirement of loss to property rather than loss of property."); *Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:20-CV-03342-JDW, 2020 WL 7024287, at *4 (E.D. Pa. Nov. 30, 2020) (looking at similar policy language and finding that the "provisions make clear that there must be some sort of physical damage to the property that can be the subject of a repair, rebuilding, or replacement").

The Court also notes the general purpose of the Policy is to insure Selery's commercial building, personal property in or near there, and lost income resulting from that property loss.

*Terry Black's* 2020 WL 7351246, at *5; *Travelers*, 2020 WL 6503405, at *8 ("[T]his is a commercial property policy, not a stand-alone business interruption policy—Plaintiff's *operations* are not what is insured—the building and the personal property in or on the building are."). Given this purpose, and the provision's language here, the most reasonable reading is that the Policy insures against property damage at the premises rather than a government order that temporarily restricted Selery's access to the property.

Selery argues that some district courts have held similar insurance policies cover COVID-19 government orders. *See e.g.*, *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020); *Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co., Ltd.*, No. 620CV1174ORL22EJK, 2020 WL 5939172 (M.D. Fla. Sept. 24, 2020); *Blue Springs Dental Care, LLC v. Owners Ins. Co.,* No. 20-CV-00383-SRB, 2020 WL 5637963 (W.D. Mo. Sept. 21, 2020). But the Court believes it is more persuasive that the majority of courts find no coverage.

The Court also notes Selery's principal cases it relies on are distinguishable. For example, in both *Studio 417, Inc.*, and *Blue Springs Dental Care*, the plaintiffs alleged that COVID-19 likely entered their facilities. *See Studio 417, Inc.*, 478 F. Supp. 3d at 802; *Blue Springs Dental Care*, 2020 WL 5637963, at *4. Here, as noted previously, Selery makes no such allegation that this occurred in its Amended Complaint or its response to the motion to dismiss.[3] Furthermore, *Sentinel Ins. Co.*, focused on the insurance policy's virus exclusion provision—not a business income provision like the one here. *See Sentinel Ins. Co.*, 2020 WL 5939172, at *3–4. While the court noted the pandemic's societal impact, the decision does not provide any justification for why

---

[3] The Court does not hold that such allegations would necessarily change the result here.

13

the Court should read the Policy's plain language on "direct physical loss of or damage to property" any differently. *Id.* at *4.

Because COVID-19 never actually caused physical damage or loss to any of Selery's property, the claim does not come within the Business Income provision's coverage. Government measures, not any tangible damage, caused a suspension of Selery's business operations. So, the provision is inapplicable.

### B. Civil Authority Provision

Selery next relies on the Civil Authority provision to justify its complaint. The provision provided:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, [Colony] will pay for the actual loss of Business Income [Selery] sustain[s] . . . caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply: (1) [a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and (2) [t]he action of civil authority is taken in response to dangerous physical conditions resulting from the damage or condition . . . that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Dkt. # 9, Exhibit 1 at p. 33). In short, the provision requires that (1) there be property damage within a mile of the commercial premises, and (2) the civil actor implemented a measure to repair that damage or to gain access to the damaged property. *See Hajer*, 2020 WL 7211636, at *3 (summarizing a similar civil authority provision).

The Fifth Circuit has previously held that a similar civil authority provision "requires proof of a causal link between prior damage and civil authority action." *Dickie Brennan & Co.*, 636 F.3d at 687. Selery does not allege that any property damage occurred at any specific place close to its facility. The civil authority provisions were not implemented in response to any property damage—but the threat of rising coronavirus cases across the country. The "causal link" between

14

property damage and the civil authority action is too attenuated or even nonexistent. Therefore, Selery cannot use the Civil Authority provision to plausibly state a claim.

The case *South Texas Medical Clinics*, cited favorably by the Fifth Circuit in *Dickie Brennan & Co.*, is illustrative. *S. Texas Med. Clinics, P.A.*, 2008 WL 450012, at *1. In *South Texas Medical Clinics*, the insured filed a claim for business losses sustained while a local evacuation order was put into effect in response to Hurricane Rita. *Id.* Although the insured's clinics never suffered any physical damage, the insured thought a similarly-worded civil authority provision covered its cause of action.[4] *Id.* at *1–2. However, the court held the provision did not cover the insured's losses because the evacuation order was "based on the anticipated threat of damage" in the area and not on any actual damage therein. *Id.* at *10.

Similarly, the government orders here were put into place because of the anticipated threat of COVID-19 throughout the state, city, and county—not damage at any properties nearby. In any event, COVID-19 at these facilities would not be property damage because it does not inflict the type of structural alteration contemplated by this provision. Because there is no property damage, Selery cannot plausibly state a claim using the Civil Authority provision.

To be sure, the Court is sympathetic to Selery's position. The COVID-19 pandemic has affected countless people in this country, both personally and economically. It appears Selery's business is among the long list of those negatively impacted. But the Court must apply the law fairly and impartially and read the Policy as it was intended. Here, the Policy's own language and

---

[4] The relevant civil authority provision provided the insurer would "pay for the actual loss of Business Income [the insured] sustain[s] and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss." *S. Texas Med. Clinics*, 2008 WL 450012, at *2.

15

other courts' decisions lead to the necessary conclusion that the Selery's losses are not covered by the Civil Authority or Business Income Provision.

### C. Other Extra-Contractual Claims

Selery also alleges several other extra-contractual claims, including violation of the Texas Insurance Code, breach of the duty of good faith and fair dealing, violations of the Texas Deceptive Trade Practices Act, negligence, negligent misrepresentation, and a declaratory judgment action under Texas Law. These claims fail because Colony rightfully rejected Selery's claim under the Policy.

First, "[a]s a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 602 (Tex. 2015). Colony's conduct also did not produce damage independent of the Policy claim and was never extreme, so the Court will not stray from this general rule. *See id.* Second, "[a]n insured cannot recover *any* damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits." *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018). Because Colony does not owe any benefits to Selery under the Policy—and no independent injury is complained of—the Texas Deceptive Trade Practices Act claim must also fail. *Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.*, No. 3:20-CV-1348-D, 2020 WL 5946863, at *2 (N.D. Tex. Oct. 7, 2020); *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 823 (Tex. 2019).

Likewise, Selery's claim for negligence and negligent misrepresentation must fail because Colony acted according to the Policy in rejecting the insurance claim and no other allegations would give rise to these causes of action. *See RLI Ins. Co. v. Caliente Oil, Inc.*, 469 F. Supp. 3d 729, 744 (W.D. Tex. 2020). Finally, Selery's declaratory judgment action mirrors its unsuccessful

breach of contract claim, so the Court dismisses this as well. *See Travelers Lloyds Ins. Co. v. Cruz Contracting of Texas, LLC*, No. 5:16-CV-759-DAE, 2017 WL 5202890, at *5 (W.D. Tex. Mar. 17, 2017).

### D. Motion for Leave to Amend

In its response to the motion to dismiss, Selery requested another opportunity to amend its complaint should the Court not find in its favor (Dkt. #13 at pp. 8–9). However, the Policy's plain language precludes Selery from alleging its losses come within the Policy's coverage. *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 469 (5th Cir. 2010); *Terry Black's Barbecue*, 2020 WL 7351246, at *10. Any attempt to amend would be similarly be unsuccessful, so the request to leave to amend is denied.

## CONCLUSION

It is therefore **ORDERED** that Defendant Colony Insurance Company's Rule 12(b)(6) Motion to Dismiss (Dkt. #11) is hereby **GRANTED**.

The entirety of Selery's claims against Colony are hereby **DISMISSED WITH PREJUDICE.** All relief not previously granted is hereby **DENIED.** The Clerk is directed to **CLOSE** this civil action.

**SIGNED this 15th day of March, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE